UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

3086 PURCHASE LLC,

Plaintiff,

-against-

THE TOWN/VILLAGE OF HARRISON, ANDREA RENDO, ROCCO GERMANI, and OLD OAKS COUNTRY CLUB, INC.,

Defendants.

25-CV-9917 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff 3086 Purchase LLC is the owner of a residential property where its members reside. It brings this action against the Town of Harrison and a country club that its members live next to, alleging that Defendants conspired to violate its rights by prosecuting various zoning violations against it. Before the Court now are Defendants' motions to dismiss and Plaintiff's motion to amend the Complaint. For the reasons that follow, Plaintiff's Equal Protection and First Amendment retaliation claims survive dismissal in part. The remaining counts, including the claims against the country club, are dismissed. The Court also largely denies Plaintiff's motion to amend as either futile or untimely.

## BACKGROUND

The following facts, unless otherwise noted, are taken from the Complaint (ECF No. 1, "Compl.") and presumed to be true for the purposes of this Order. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Defendants are the Town/Village of Harrison, New York ("Harrison" or the "Town"), the Town's building inspector, Rocco Germani, and the Town Attorney, Andrea Rendo (collectively, the "Town Defendants"), and Old Oaks Country Club Inc. ("Old Oaks"). ¶ 1. Old Oaks has

operated as a country club with a golf course for more than forty years. *See* ECF No. 1-4 ("Article 78 Compl.") at 10–11. Plaintiff—whose constituent members are a local Harrison family and which owns the 3086 Purchase Street property (the "3086 Property" or the "Property")—alleges that the Town has targeted it for zoning enforcement in retaliation for Plaintiff's complaints about unauthorized construction at Old Oaks in recent years. ¶¶ 2–3.

Plaintiff and Old Oaks are neighbors. ¶ 30. According to Plaintiff, all the trouble began when Old Oaks expanded a driving range for its members to play golf next to the 3086 Property. ¶ 27. Those renovations, which began the same year Plaintiff purchased the Property in 2021, included a new parking area and paved path that fall only forty feet from the 3086 Property. *Id.*; Article 78 Compl. at 9, 13. Old Oaks also expanded its "tee box"—that is, the area where golf players begin playing a hole—such that it moved closer to the shared property line with Plaintiff. *Id.* at 13, 19. When renovations began, Plaintiff's members did not yet live full time on the 3086 Property. *See* ¶ 27; Article 78 Compl. at 9.

This construction has had a substantial impact on the local ecology, the 3086 Property, and the Property's resident family. Impervious surfaces now cover more than half an acre of the country club, and the area's grade has changed. ¶ 28. As a result, drainage from Old Oaks' thirty-six acres diverts onto Plaintiff's property via a twelve-inch pipe. ¶¶ 36–38. Golf balls now land in the 3086 Property's backyard; employees and vendors at Old Oaks wander across the property line; Plaintiff's members can hear golf carts and country club members talking near the property line; and a local stream becomes saturated with water whenever it rains—causing erosion and other damage to the 3086 Property. *See* ¶ 30; Article 78 Compl. at 13.

The construction was not conducted in line with the Town's building code, so on February 22, 2024, the Town issued three violations to Old Oaks.[1] ¶ 31; *see also* ECF No. 1-1. The violations informed Old Oaks that, contrary to Town code, it failed to secure a building permit, Planning Board approval for the site plan, and Town Engineer approval for the land development's impact on stormwater management and erosion. *See* ECF No. 1-1. Less than a month later, Germani (the building inspector) determined that the Old Oaks construction required a special "variance"—that is, advanced permission from the zoning board—because of its proximity to water bodies. ¶ 32.

On February 22, 2024, Matthew Fitzgerald, the code enforcement officer who issued violations to Old Oaks, also surveyed the 3086 Property and found that violations were warranted there, too. ¶ 39; *see also* ECF Nos. 1-1 to 1-2. Fitzgerald cited the 3086 Property for three failures to secure building permits related to the installation of a gravel parking area and a sports court, and he issued a fourth violation for failure to secure Town Engineer approval for the development's impact on stormwater management and erosion (collectively, the "February Violations"). *See* ECF No. 1-2. The violations provided between three and fourteen days for Plaintiff to abate and otherwise warned that Plaintiff would incur a "separate and specific violation" of the code every week thereafter with fines reaching up to $1,000 daily. *Id.*

Following the February Violations, three attorneys representing Plaintiff contacted Town officials, including Rendo, about their efforts to cure Plaintiff's violations and to complain about Old Oaks' violations. *See* ¶¶ 41–45. On March 15, 2024, one of Plaintiff's attorneys informed Fitzgerald that "Plaintiff was preparing all necessary applications" to remediate its violations. ¶

[1] It appears that the code enforcement officer's visit was likely prompted by Plaintiff, who "notif[ied] the Building Inspector" about changes to the Old Oaks property. *See* Article 78 Compl. at 19.

41. The Complaint does not allege that Plaintiff in fact submitted the referenced applications. Later, in the span of less than a week between May 24 and May 30, 2024, two of Plaintiff's attorneys separately contacted Rendo to discuss Old Oaks, and one of Plaintiff's members contacted Rendo directly to request a meeting about the same. *See* ¶¶ 43–46. On June 5, 2024, Rendo acknowledged receipt of the family member's outreach and referenced the "numerous phone calls and [other] correspondence" that she had already received from the family's counsel. *See* ¶ 46.

On that same day, the Town issued a summons (the "June Summons") for Plaintiff to appear in court in connection with the February Violations. ¶ 48; *see also* ECF No. 1-3. As part of the enforcement proceedings, Rendo represented that no response was received from 3086 Purchase LLC following issuance of the violations. ¶ 49.

Tired of the Town's inaction regarding Old Oaks' violations, and with the assistance of a consulting engineer, Plaintiff filed an Article 78 proceeding on November 17, 2024, seeking to compel a determination from Germani that Old Oaks required specific approvals for its construction on the driving range. ¶ 56; Article 78 Compl. at 21. The timing of the petition was informed, in part, by a public hearing scheduled before the Town Planning Board for November 19, 2024, regarding Old Oaks' site plan application. *See* Article 78 Compl. at 18–19. On November 18, 2024, Plaintiff served the Town with its petition. ¶ 56; *see also* Article 78 Compl. Around that same time, Plaintiff appealed to the Zoning Board after hearing that Old Oaks had completed an application for its existing construction. *See* Article 78 Compl. at 14 n.4; *accord. id.* at 21 n.7.

Two days later, on November 20, 2024, the Town issued at least three new violations against Plaintiff together with a summons to appear in court for two of the violations (the

"November Summons" and collectively, the "November Violations and Summons"). ¶¶ 57–58; *see also* ECF No. 1-5. The violations were observed on November 18, 2024, purportedly from over 300 feet away on the Old Oaks property. ¶ 61. In the violations, the Town asserted that a playhouse in the backyard of the 3086 Property lacked a necessary building permit and exceeded the permitted height of fifteen feet, and that Plaintiff failed to replant required trees. ¶¶ 57–58; *see also* ECF No. 1-5. No summons accompanied the latter violation, which was subsequently withdrawn after the Town confirmed that Plaintiff had satisfied code requirements. ¶ 58; ECF No. 1-5 at 2. To Plaintiff's knowledge, no other Harrison property has received a violation for the size of a children's playhouse. *See* ¶ 60. Plaintiff alleges that the Town's pursuit—via Germani and Rendo—of the November Violations and Summons reflects a determination to prosecute them for unmeritorious violations. *See* ¶¶ 61–73.

To support the alleged conspiracy between the Town and Old Oaks, Plaintiff points to an internal email exchange between Old Oaks' counsel and architect immediately following the Town's issuance of the November Violations and Summons. *See* ¶ 75. On November 20, 2024, counsel for Old Oaks, Nicholas Ward-Willis, sent its architect, KGD, a topographic survey of the 3086 Property that depicted the placement of trees and pavement. ¶ 76. Although the survey was more than two years old, the document itself was created on November 14, 2024. *Id.* On November 27, 2024, four more emails were exchanged. *See id.* ¶¶ 77–80. In the emails, Mr. Ward-Willis sent KGD Plaintiff's 2022 tree removal application and plan, Plaintiff's 2022 tree replanting plan, and another set of documents containing a 2022 wetland delineation. *Id.*

Plaintiff filed this complaint on November 26, 2025. In it, Plaintiff alleges that Defendants violated the Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), by running afoul of the Equal Protection Clause of the United States Constitution and the New York State

Constitution (Counts I and II) and the First Amendment of the United States Constitution (Counts III and IV); the Civil Rights Act, 42 U.S.C. § 1985 (Count V); New York's anti-SLAPP law, N.Y. Civ. Rights Law § 70-a (Counts VI and VII); and the Civil RICO statute, 18 U.S.C. § 1962(c) (Count VIII). ¶¶ 105–79. The Town Defendants answered on January 21, 2026. ECF No. 29. On February 13, 2026, Old Oaks and the Town Defendants filed their motions to dismiss based, respectively, on Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 33, 36. Plaintiff opposed both motions on March 23, 2026, and replies were filed on April 20, 2026. ECF No. 48 ("MTD Opp."); ECF No. 51 ("Town Reply"); ECF No. 52. More than one month later, Plaintiff requested leave to file a sur-reply, which the Court denied. *See* ECF Nos. 56, 61. During briefing on the Motions to Dismiss, the Court also denied two requests from Defendants to stay discovery. ECF Nos. 45, 55.

Then, on July 19, 2026, Plaintiff requested leave to file an amended complaint and filed its proposed amended complaint (ECF No. 76-1, the "Proposed Amended Complaint" or "PAC") and the related documents under seal, because the Proposed Amended Complaint incorporated discovery responses designated as confidential by Defendants. *See* ECF Nos. 74–75. Since then, the parties have vigorously litigated various discovery disputes. *See, e.g.*, ECF Nos. 83–86, 90–98, 100–04, 106, 109–11, 116–19.

The Proposed Amended Complaint seeks to add two additional counts under Section 1983 for violating the Fourth Amendment of the United States Constitution and conspiracy to do the same. PAC ¶¶ 192–209. Plaintiff also adds new allegations to support its existing and proposed claims, particularly the existence of joint action and a conspiracy between Old Oaks and the Town Defendants. The PAC alleges that Old Oaks "request[ed] . . . [that] a code enforcement officer or another Town employee . . . visit Old Oaks" and "investigate matters

relating to trees on [the 3086 Property]" and that, as part of this request, Old Oaks gave the Town "incorrect" information that led to the erroneous tree-related violation. *See* PAC ¶¶ 10, 88, 91–92. Old Oaks also inquired with the Town about the playhouse on the 3086 Property. *Id.* ¶ 15. Germani confirmed that the Town typically visits a property where zoning violations are alleged before issuing any violation—a process that the Town ostensibly did not follow here when a code enforcement officer observed the 3086 Property from Old Oaks' property. *See id.* ¶¶ 12–13. The PAC also proffers, however, that representatives from the Town visited the 3086 Property "multiple times" prior to November 16, 2024. *Id.* ¶ 101. Germani spoke with an Old Oaks representative about the code enforcement officer's visit to the country club between the visit on November 18, 2024, and the issuance of the November Summons on November 20, 2024. *Id.* ¶ 14. Lending further support that Old Oaks was involved through this process, Plaintiff argues, is the allegation that Ward-Willis requested Plaintiff's building permits and certificates of occupancy, and on November 19, 2024, "requested any violation, summons, and tree-related information" about the 3086 Property. *Id.* ¶ 16. Indeed, Ward-Willis received a copy of the Article 78 proceeding against it before Old Oaks was served, and he received a copy of the November Summons before Plaintiff did. *Id.* ¶¶ 16, 93. Ward-Willis even knew that the Town was served in the Article 78 proceeding before that information was public. *See id.* ¶ 93. The PAC also identifies further communication between Old Oaks and the Town in the wake of the November Summons. *See, e.g.*, *id.* ¶ 108 (August 11, 2025 prosecutorial document bearing Old Oaks' name). Finally, the PAC notes that Old Oaks has leveraged the ongoing prosecution against Plaintiff to its advantage. *See id.* ¶ 25 (Ward-Willis referencing the playhouse prosecution in an April 16, 2026 zoning board meeting).

As to the Town's culpability, the PAC alleges that Rendo "has admitted under oath that she is not aware of any evidence whatsoever that the playhouse exceeds [fifteen] feet." *Id.* ¶ 17. And, Rendo has since threatened to pursue additional charges against Plaintiff, including that the playhouse encroaches on a required setback from the property line. *Id.* ¶ 19.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings shares the same standard as that of a Rule 12(b)(6) motion for failure to state a claim. *Miller v. Lamanna*, 169 F.4th 118, 129 (2d Cir. 2026) (citation omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). Where relevant, the Court may consider "documents attached to the complaint as exhibits," in addition to "the facts alleged in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also "take judicial notice of," and thus consider, "publicly available documents." *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

**DISCUSSION**

The Complaint brings eight sprawling claims under the Civil Rights Act, 42 U.S.C. § 1983 and § 1985, New York's anti-SLAPP law, N.Y. Civ. Rights Law § 70-a, and the Civil RICO statute, 18 U.S.C. § 1962(c). In those claims, Plaintiff alleges that Defendants (1) disparately treated it when compared with Old Oaks and similarly situated homeowners with no rational basis, (2) enforced Town laws against Plaintiff in retaliation for petitioning the government and raising concerns about construction at Old Oaks, (3) conspired to violate Plaintiff's civil rights, (4) initiated a baseless lawsuit against Plaintiff, and (5) worked as a racket to conduct illegal activities. During briefing, Plaintiff withdrew its Section 1985 claim for civil conspiracy. MTD Opp. at 35 n.10.

The Court's discussion proceeds as follows. First, the Town Defendants' argument that the Court must abstain from, and thus dismiss, claims for equitable relief under *Younger v. Harris*, 401 U.S. 37 (1971), is rejected. Second, Plaintiff's Section 1983 claims are examined. Such claims are dismissed in part against Rendo, who is absolutely immune from damages under the present allegations, and in full against Old Oaks, for whom Plaintiff fails to adequately allege a basis for liability. The First Amendment retaliation claim regarding the November Summons then survives as against the remaining defendants, even though the First Amendment claim regarding the June Summons fails because it was issued with probable cause. Next, the federal Equal Protection claim is dismissed in part as to the November Summons, but it survives in part because Plaintiff successfully alleges that the 3086 Property and Old Oaks are similarly situated

regarding the June Summons. The state Equal Protection claim, however, is not actionable because of the availability of a federal remedy. Third, the anti-SLAPP claims are dismissed because Plaintiff concedes that the Town had probable cause—a substantial basis in law and fact—when it initiated its prosecution against Plaintiff. Fourth, the RICO claim fails because no predicate act is adequately alleged. And finally, the Court denies the Motion to Amend, except with respect to newly added allegations that support the surviving claims.

## I. *Younger* Abstention Is Inappropriate at This Stage

The Town Defendants first claim that the ongoing criminal proceedings to enforce the violations at issue here require the Court to abstain from exercising jurisdiction over the injunctive and declaratory claims in this case. *See* ECF No. 38 ("Town MTD") at 10–13.[2] Indeed, "[t]he *Younger* abstention doctrine embodies the 'longstanding public policy against federal court interference with state court proceedings.'" *Gristina v. Merchan*, 131 F.4th 82, 86 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 248 (2025) (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)).

*Younger* abstention, however, is "the exception, not the rule." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 82 (2013) (citation and internal quotation marks omitted). It only applies where a "state criminal prosecution[]," "civil enforcement proceeding[]," or "civil proceeding[] involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions" is at issue. *Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint*, 571 U.S. at 73). In deciding whether to invoke *Younger*, the Court may also consider, among other things, whether "the state proceeding affords

[2] The parties agree that *Younger* abstention does not apply to Plaintiff's damages claims. *See* Town MTD at 10; MTD Opp. at 15–16.

the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Sprint*, 571 U.S. at 81 (2013) (limiting this factor's role). Unless *Younger* and its progeny counsel abstention, the Court is "obliged to decide cases within the scope of federal jurisdiction," *Gristina*, 131 F.4th at 86 (quoting *Sprint*, 571 U.S. at 72). The Court may also still hear the case if there are "special circumstances suggesting bad faith, harassment[,] . . . irreparable injury that is both serious and immediate," "or any other unusual circumstance that would call for equitable relief." *Pathways, Inc. v. Dunne*, 329 F.3d 108, 113–14 (2d Cir. 2003) (citation and internal quotation marks removed); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 408 n.21 (S.D.N.Y. 2014) (quoting *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 n.11 (2d Cir. 2003)).

Here, the parties dispute whether Plaintiff's injunctive and declaratory claims are barred, and whether Plaintiff's damages claims should be stayed pending the outcome of the Town's prosecution against Plaintiff. Plaintiff's only argument against *Younger* abstention invokes the bad-faith exception, MTD Opp. at 12–15, which requires a plaintiff to "show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive," *Astoria Gen. Contracting Corp. v. Off. Of Comptroller of City of New York*, 159 F. Supp. 3d 385, 398 (S.D.N.Y. 2016) (quoting *Diamond "D"*, 282 F.3d at 199). The "subjective motivation of the state authority in bringing the proceeding" guides this Court's inquiry. *Id.* (quoting *Diamond "D"*, 282 F.3d at 199).

"[A] refusal to abstain is . . . justified where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." *Cullen v. Fliegner*, 18

F.3d 96, 103–04 (2d Cir. 1994). "In such cases, a showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the *Younger* doctrine and the expectations for success of the party bringing the action need not be relevant." *Id.* at 104 (cleaned up).

Under the relevant Second Circuit precedent, drawing all reasonable inferences in Plaintiff's favor, and based on equitable considerations, Plaintiff has sufficiently alleged that the prosecution was, at a minimum, expanded in bad faith to retaliate against Plaintiff, and thus "animated by" an illegitimate motive. *See Astoria Gen. Contracting Corp.*, 159 F. Supp. 3d at 398; *infra* Section II.C. Thus, relief from *Younger* abstention is warranted. Regardless of whether the Town will succeed in its prosecution, the facts alleged suggest that the enforcement action involves retaliation against Plaintiff. A building code officer inspected Plaintiff's property on the day that Plaintiff served its Article 78 lawsuit on the Town, and the Town issued violations and a summons against Plaintiff two days later. Compl. ¶¶ 56–57, 61. The Town departed from its standard practice of allowing time to cure violations prior to issuing a summons—a practice that it had utilized in its prior dealings with Plaintiff—and issued a summons on the same day that it issued the November Violations. *Id.* ¶¶ 57, 64. It offered Plaintiff no opportunity to cure the violations before prosecuting them. *Id.* ¶ 64. These allegations alone constitute "special circumstances suggesting bad faith" retaliation against Plaintiff, and thus *Younger* abstention is not warranted. *See Dunne*, 329 F.3d at 113–14. Accordingly, the Court rejects abstention as a basis to dismiss or stay any claims here.

## II. Most of the Section 1983 Claims Fail

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42

U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). Plaintiff brings claims under Section 1983 for alleged violations of the following protections: (1) the Equal Protection Clause of the United States Constitution; (2) the Equal Protection Clause of the New York State Constitution; and (3) the First Amendment of the United States Constitution. Compl. ¶¶ 105–48. The Court first finds that Defendant Rendo is entitled to absolute immunity from damages for these claims and then concludes that the allegations are insufficient to sustain any constitutional violations against Old Oaks. The Court then addresses the constitutional claims against the remaining Town Defendants. The First Amendment retaliation claims survive as to the November Summons only, because the claim based on the June Summons is barred by probable cause. The federal Equal Protection claim fails as to the November Summons for want of a suitable comparator, but the claim survives with respect to the June Summons. Lastly, the New York Equal Protection claim fails to state a claim because of the availability of a federal Equal Protection remedy.

**A. Rendo Is Entitled to Absolute Immunity from Damages**

The Town Defendants argue that the damages claims against Rendo are barred by absolute immunity, because all the allegations against her relate only to her role as the town attorney prosecuting code violations against Plaintiff. *See* Town MTD at 13–15. The Court agrees.

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a [Section] 1983 lawsuit . . . ." *Anilao v. Spota*, 27 F.4th 855, 863–64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)).

Absolute immunity is guided by a "functional approach," where the Court examines "the nature of the function performed, not the identity of the actor who performed it." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The doctrine bars a civil suit against a prosecutor for conduct that is "intimately associated with the judicial phase of the criminal process"—that is, "with initiating or presenting the State's case." *Anilao*, 27 F.4th at 864 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)); *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

However, a prosecutor's "administrative duties and those investigatory functions" that go beyond preparation to initiate a prosecution or proceeding "are not entitled to absolute immunity." *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 333 (S.D.N.Y. 2017) (quoting *Buckley*, 509 U.S. at 273). That means that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," like searching for clues or probable cause, she gains no more immunity protection than a police officer performing that action would normally receive. *Buckley*, 509 U.S. at 273 (citation and internal quotation marks omitted). But, when she "evaluat[es] evidence and interview[s] witnesses [to] prepare[] for trial," she is safely operating within an advocate's role and is entitled to full immunity. *Id.*

The prosecutor's motivation for acting is irrelevant to the immunity analysis—and, for that reason, the Second Circuit has even extended absolute immunity "to a prosecutor who conspires to present false evidence at a criminal trial." *Anilao*, 27 F.4th at 864 (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)) (cleaned up). In other words, "exercis[ing] a power dishonestly" does not inherently "overstep its bounds." *Id.* (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). At all times, "[t]he relevant question, therefore, is whether a reasonable

prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).

Here, Rendo is covered by absolute immunity for the conduct alleged. Plaintiff's primary bases for liability against Rendo are two statements in a state court affirmation—one claiming that the June Summons was issued "after receiving no response" to the February Violations, and the other containing a purported half-truth about the height of the playhouse. *See* MTD Opp. at 18; Compl. ¶¶ 49, 66. Plaintiff argues that "Rendo was involved in the investigative phase" leading up to the summonses and thus is not entitled to immunity. MTD Opp. at 18–21. In support, Plaintiff points to Rendo's communication with two of Plaintiff's attorneys before the June Summons and the fact that Rendo "was a [t]own [a]ttorney" when a code enforcement officer was purportedly instructed to find a violation on November 18, 2024. MTD Opp. at 18 (citing Compl. ¶¶ 41–47, 68) (alleging that the code enforcement officer stated that he "went to the golf course" and "brought back what was asked of [him] to bring back"). However, no allegations in the Complaint attribute the latter instruction to Rendo, and the Complaint itself states that Plaintiff's attorneys and one of its members reached out to Rendo to discuss Old Oaks, not that Rendo was engaged in any affirmative investigation into Plaintiff. Compl. ¶¶ 42–46.

Turning to the disputed statements in Rendo's state court affirmation, Plaintiff's cited cases fail to show that the affirmations are outside of Rendo's role as an advocate; in fact, they establish the opposite. *See* MTD Opp. at 19–20. In *Kalina v. Fletcher*, the Supreme Court determined that absolute immunity does not attach to a prosecutor's "sworn testimony" in a situation when "any competent witness" can provide testimony. 522 U.S. 118, 129–30 (1997). Thus, false statements in an arrest warrant that could have been provided by any witness and that are made as one of the first steps to even begin a criminal investigation are not protected. *Id.* at

129–31. On the other hand, the Second Circuit found that absolute immunity *does* attach to false statements in a material witness order, which can only be sought by an attorney and issued when the prosecution is ready for trial. *Flagler v. Trainor*, 663 F.3d 543, 548 (2d Cir. 2011).[3]

*Norton v. Town of Brookhaven* follows the same reasoning. There, as Plaintiff acknowledges, the court held that "swearing to facts in a criminal accusatory instrument is not a function for which absolute immunity is afforded." *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 231 (E.D.N.Y.), *on reconsideration*, 47 F. Supp. 3d 152 (E.D.N.Y. 2014) (citing *Kalina*, 522 U.S. at 130–31). The holding rests on the principle that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 231 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 347 n.2 (2d Cir. 2000)).

Here, both of Rendo's challenged statements appeared in an affirmation accompanying her opposition to a motion to dismiss in the state proceeding against Plaintiff—a clear "judicial phase of the criminal process" that occurs long after probable cause has issued. *See* Compl. ¶¶ 49, 66; *Anilao*, 27 F.4th at 864. The statement that Rendo "receiv[ed] no response" to the February Violations distinctly related to her decision to initiate the prosecution. *See* Compl. ¶ 49. And, similarly, her purported half-truth about the code enforcement officer's statement involved her basis for moving forward with the prosecution of the November Violations. *See id.* ¶ 66. To the extent that Plaintiff's argument depends on Rendo knowing that there is no basis for the playhouse size prosecution, that, too, does not undermine absolute immunity. *See Anilao*, 27 F.4th at 870 ("[P]rosecutors are afforded absolute immunity for bringing charges that they knew

---

[3] Plaintiff's counsel cites to the portion of *Flagler* that analyzes a prosecutor's attempt to break into a witness's custodial phone. *See* MTD Opp. at 19 (citing *Flagler*, 663 F.3d at 549–50). It is that clear misconduct that the Second Circuit labeled as "investigatory," *Flagler*, 663 F.3d at 549–50, and that has no relevance here.

were false . . . ." (citing *Shmueli v. City of New York*, 424 F.3d 231, 238 (2d Cir. 2005)); *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (finding that absolute immunity attached where a prosecutor presented false evidence to and withheld exculpatory evidence from a grand jury).

Finally, although Plaintiff asks the Court to defer a ruling on absolute immunity, MTD Opp. at 21, deferral is not warranted here. "District courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery." *Town of Brookhaven*, 33 F. Supp. 3d at 229 (cleaned up). That is because the immunity entitlement "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Second Circuit only counsels against a determination on absolute immunity on a motion to dismiss "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role." *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995). Because the facts in the Complaint conclusively allege that Rendo acted in her capacity as an advocate for the Town, it is appropriate to bar her from a Section 1983 prosecution for damages at this stage. Nonetheless, because absolute immunity does not shield a prosecutor from a claim for injunctive relief, the Court will still consider those claims against her. *See Anilao*, 27 F.4th at 863–64.

**B. The Constitutional Claims Against Old Oaks Fail**

Plaintiff brings Equal Protection and First Amendment retaliation claims against Old Oaks and the Town Defendants. Under Section 1983, "constitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). Supreme Court cases on this topic "have not been a model of consistency." *United*

*States v. Stein*, 541 F.3d 130, 147 (2d Cir. 2008) (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632 (1991)). However, state action can generally be attributed to a private entity where, as Plaintiff contends, the private actor conspired with the state actor or was "a willful participant in joint activity with the State or its agents." *Betts*, 751 F.3d at 85 (citations omitted); *Smulley v. Liberty Mut. Holding Co., Inc.*, No. 22-1158, 2023 WL 2494098, at *2 (2d Cir. Mar. 14, 2023) (summary order) (citing *Tower v. Glover*, 467 U.S. 914, 920 (1984)). Separate from a joint action theory, a successful Section 1983 claim alleging a conspiracy between a private actor and state officials can also create liability against a private actor under Section 1983. *See Smulley*, 2023 WL 2494098, at *2 ("A private actor 'engaged in a conspiracy with state officials to deprive another of federal rights' acts under color of state law for the purposes of [Section] 1983." (quoting *Tower*, 467 U.S. at 920).[4]

The Complaint alleges the following in favor of joint action or a conspiracy: (1) Old Oaks' counsel possessed photographs of Plaintiff's zoning plans that were taken from inside Town Hall, including one of which was taken on November 14, 2024; (2) Old Oaks' counsel emailed some of these photographs and other property files regarding the 3086 Property to Old Oaks' architect between November 20 and November 27, 2024; (3) on November 18, 2024, a code enforcement officer went to the Old Oaks property to bring back "what was asked of [him]"—which, Plaintiff alleges, was the November Violations against Plaintiff; and (4) the

[4] The Court here considers the allegations in the Proposed Amended Complaint, including the new claim for a Section 1983 conspiracy, *see* PAC ¶¶ 205–09, as part of a futility analysis. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (instructing that leave to amend should be denied upon a showing of futility (citation omitted)); *Panther Partners Inc. v. Ikanos Comm'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (explaining that "[f]utility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (citation omitted)). Because the PAC fails to state a claim for conspiracy against Old Oaks, leave to amend is properly denied. *See infra* Section V.

purported reason for the November 18 visit was a "routine inspection of a tree removal replanting plan," the same topic about which Old Oaks inquired. *See* MTD Opp. at 35; Compl. ¶¶ 11, 61, 64, 68, 75–81. Additionally, the Proposed Amended Complaint adds the following allegations: (5) Old Oaks requested that a Town official visit it and investigate the trees on the 3086 Property, and it gave the Town "incorrect information in the process"; (6) Old Oaks inquired with the Town about the playhouse on Plaintiff's property; (7) Germani spoke with an Old Oaks representative between the code enforcement officer's visit on November 18, 2024, and the issuance of the November Summons on November 20, 2024; (8) counsel for Old Oaks, Mr. Ward-Willis, received a copy of Plaintiff's Article 78 proceeding before the country club was served and received a copy of the November Summons before Plaintiff did; (9) Ward-Willis requested various information about the 3086 Property from the Town, including any violations and summonses, the day before the November Summons was issued; (10) Old Oaks has used the ongoing prosecution against Plaintiff to its advantage in front of the Town Zoning Board; and (11) a document exchanged between Town attorneys related to the prosecution of Plaintiff includes "Old Oaks" in the title. PAC ¶¶ 10, 14–16, 25, 88, 91–93, 108.

According to Plaintiff, these allegations show that Old Oaks' counsel possessed "inside access to Town records," photographed a two-year-old document six days before the November Summons was issued, and began corresponding about the 3086 Property "immediately following the filing of the Article 78 litigation." *See* MTD Opp. at 35; Compl. ¶¶ 61, 81, 153. Plaintiff also observes that the photographs and email correspondence involved trees on the 3086 Property—the same subject of one of the November Violations. Compl. ¶¶ 153. Finally, Plaintiff contends these allegations show that "the code enforcement officer was invited to (or otherwise

coordinated with) Old Oaks for the express purpose of issuing a violation and summons to Plaintiff." *Id.* ¶ 102.

The Court evaluates each basis for Section 1983 liability against Old Oaks—that is, a joint action theory of liability and the proposed conspiracy claim—and finds that neither suffices.

**1. Neither the Complaint nor the Proposed Amended Complaint Adequately Allege Joint Action**

Plaintiff primarily pursues a joint action theory of liability against Old Oaks, contending that Old Oaks "willfully engaged in joint activity with the state or its agents." MTD Opp. at 34–37 (quoting *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 337 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011)). To state a claim against a private entity, a plaintiff "must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act" and that the two shared "a common goal of violating [the plaintiff's] rights." *Betts*, 751 F.3d at 84–85 (citations and internal quotation marks omitted). "The touchstone of joint action with the state is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the police." *Savarese v. City of N.Y.*, 547 F. Supp. 3d 305, 340 (S.D.N.Y. 2021) (cleaned up). "The Supreme Court has also explained joint action through the concept of a 'meeting of the minds' between law enforcement and private individuals." *Id.*(citations omitted) (referencing *Adickes v. Kress & Co.*, 398 U.S. 144, 158 (1970)). The analysis begins "by identifying the specific conduct of which [Plaintiff] complains" to determine if Old Oaks was acting under color of state law. *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)).

Plaintiff's allegations, taken together, do not permit the Court to infer that Old Oaks and the Town were acting in concert to commit an unconstitutional act. The allegations tend to show, at most, that Old Oaks contacted and provided information to the Town about potential zoning

violations on the 3086 Property and that, in return, the Town shared limited information about zoning litigation involving Plaintiff that was or soon would be public. Specifically, the allegations indicate that Old Oaks permitted the Town to use its property during its investigation of the 3086 Property, and that both before and after the November Violations were issued, Old Oaks was conducting its own investigation about potential tree removal and replanting violations on the 3086 Property to report to the Town. *See* Compl. ¶¶ 61, 75–81; PAC ¶¶ 16, 88, 93. They also support that Old Oaks inquired with the Town about other potential zoning violations, like the playhouse, *see* PAC ¶¶ 10, 15, and that Old Oaks communicated internally and with the Town about the 3086 Property around the time that the November Summons was issued, *see* Compl. ¶¶ 61, 75–80; PAC ¶¶ 14, 16, 93. Finally, the allegations suggest that Old Oaks has leveraged the ongoing prosecution to its advantage and that Old Oaks provided an affirmation as part of the ongoing Town prosecution against Plaintiff. *See* PAC ¶¶ 25, 108.

Plaintiff contends that "Old Oaks conspired with the Town Defendants to orchestrate an investigation where none existed." MTD Opp. at 37 (emphasis omitted). It especially points to the November 20–27 emails in support. *Id.* Three issues appear with this theory.

First, it is well established in this Circuit that "furnish[ing] information to law enforcement—even if allegedly false or misleading" or part of "extensive" cooperation—"do[es] not transform private conduct into state action."[5] *Aprahamian v. Sandoz, Inc.*, No. 24-CV-9045 (NSR), 2026 WL 221286, at *11 (S.D.N.Y. Jan. 28, 2026) (citation omitted); *see also, e.g.*, *Betts*, 751 F.3d at 84–86 (calling the police and fabricating an assault claim against the plaintiff did not make defendant a joint participant); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268,

[5] Indeed, Plaintiff has also utilized this benefit by "notifying the Building Inspector" about unauthorized construction on the Old Oaks property. *See* Article 78 Compl. at 19.

272 (2d Cir. 1999) (requesting police assistance and providing information that led to police action did not make the defendant "a joint participant in state action"). That is because "[w]here a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render it a state actor under Section 1983." *Betts*, 751 F.3d at 85 (cleaned up); *see also Rodriguez v. Winski*, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) ("In considering joint action claims, courts must assess whether the police independently evaluated the situation."). The crux of this analysis is whether the enforcement agency "reached independent decisions as to what action, if any, to take and how." *Rodriguez*, 973 F. Supp. 2d at 423; *see also, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (finding joint action where "an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge"); *Lienau v. Garcia*, No. 12-CV-6572 (ER), 2013 WL 6697834, at *6 (S.D.N.Y. Dec. 19, 2013) (collecting cases).

Nothing in the Complaint or Proposed Amended Complaint suggests that the Town substituted Old Oaks' judgment for its own. For each violation alleged, a building code enforcement officer viewed Plaintiff's property for himself to determine a basis. *See* Compl. ¶ 61 (explaining that a code enforcement officer viewed the playhouse on November 18, 2024); PAC ¶ 101 (noting that representatives from the Town visited the 3086 Property "multiple times" prior to November 16, 2024). It is therefore distinguishable from cases where the government acted without probable cause at the direction of a private party, *see Bang v. Utopia Rest.,* 923 F. Supp. 46, 49–50 (S.D.N.Y. 1996); *Borisova v. Friberg*, No. 18-CV-7440 (AMD), 2020 WL 5752073, at *4 (E.D.N.Y. Sept. 25, 2020), or where the government worked with a private party to fabricate evidence, *see White v. Moylan*, 554 F. Supp. 2d 263, 267 (D. Conn. 2008). Indeed, the Town never issued a tree-related summons and later withdrew that violation against Plaintiff, which

tends to support the exercise of independent judgment as to the issuance of summonses and the decision to prosecute. *See* Compl. ¶ 58; ECF No. 1-5 at 2. Because there are no facts alleged to suggest that either summons or the ongoing prosecution "involved the type of improper abdication of decision-making authority" to Old Oaks or joint action to fabricate evidence, then, there is no actionable claim for joint action. *Rodriguez*, 973 F. Supp. 2d at 422; *see also Betts*, 751 F.3d at 85–86 (discussing *Bang* and *White*).

Second, Section 1983 "does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who *act* under color of law," *Savarese*, 547 F. Supp. 3d at 341 (quoting *Defeo v. Leibstein*, No. 16-CV-5150 (SJF), 2018 WL 5777023, at *4 (E.D.N.Y. Nov. 1, 2018)). Plaintiff's allegation that Old Oaks has leveraged the ongoing prosecution against Plaintiff to its advantage, *see* PAC ¶ 25, is thus immaterial to the joint action question.

Third, more importantly, the Town never took any action on the main issue about which Old Oaks was purportedly attempting to conspire with the Town. Much of the joint action allegations center on Old Oaks' pursuit of tree planting violations on the 3086 Property. *See, e.g.*, Compl. ¶¶ 76–79, 102; PAC ¶¶ 91–93; MTD Opp. at 9, 35 ("These communications, coinciding with the irregular 'inspection' from Old Oaks' Property, confirm that the Town was acting hand-in-glove with Old Oaks to target Plaintiff with retaliatory violations (which initially included tree-related violations)."). No summons was ever issued regarding trees on Plaintiff's property. Compl. ¶ 58. Despite some ambiguity in its briefing, Plaintiff is clear that its claims are not brought for the issuance of the violations themselves, but rather for the issuance of the summonses and the decision to prosecute Plaintiff. *See* MTD Opp. at 33 (arguing that the Equal Protection claims "aris[e] from the Town's selective enforcement of zoning laws—i.e., the

Town's decision to prosecute violations against Plaintiff"—whereas the First Amendment retaliation claims arise from the "issuance of summonses to Plaintiff"). As such, there is no claim that Old Oaks and the Town conspired to violate Plaintiff's constitutional rights with respect to the Town issuing violations as to the trees on Plaintiff's property. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").

Plaintiff's other allegations, taken in the light most favorable to Plaintiff, also fail to support a "meeting of the minds." *Savarese*, 547 F. Supp. 3d at 340. First, the mere fact that Old Oaks possessed photographs of Town records that were not previously produced in other related litigation does not tend to show an agreement or "inside access." *See* Compl. ¶ 81. The Complaint does not allege that the subject of the photographs was privileged, restricted from public access, or otherwise immune from a Freedom of Information Law ("FOIL") request, or that the Town and Old Oaks discussed taking any inappropriate or unlawful acts against Plaintiff.[6]

Second, the internal Old Oaks conversations about Plaintiff's tree plans following the issuance of the November Summons support that Old Oaks investigated a basis for violations on the 3086 Property—but not that it committed any unlawful act. *See* Compl. ¶¶ 75–80.

[6] Although Plaintiff avers that the photographed documents "were never produced to Plaintiff, never produced in response to FOIL requests, and never disclosed in discovery," Compl. ¶ 81, Plaintiff fails to allege any basis from which the Court can infer that the documents should have properly been disclosed to Plaintiff. Plaintiff does not allege that it ever made a FOIL request or that it was entitled to and received discovery from the Town on these narrow issues. *Compare id.* ¶¶ 75–80 (describing Old Oaks' access to photographs of "surveys, planting plans, and a wetlands delineation") *with id.* ¶ 73 ("Rendo has affirmed that she has provided all discovery relating to the *playhouse* violation . . . ." (emphasis added)).

Third, the affirmation that Old Oaks appears to have provided in the ongoing state case similarly establishes no more than communication between Old Oaks and the Town, akin to a witness providing information to law enforcement. *See* PAC ¶ 108.

And finally, the temporal proximity of various communications to the issuance of the November Summons does not *plausibly* suggest a meeting of the minds, because other events around the same time explain the communications. *See* PAC ¶¶ 14, 16, 93; *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589–90 (2026) ("[T]o nudge a claim across the line from conceivable to plausible, a plaintiff must plead facts that, if true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, and to rule out obvious alternative explanations for the defendant's conduct." (cleaned up)). Plaintiff's Article 78 litigation, filed on November 17, 2024, and served on the Town on November 18, 2024, named only Old Oaks and Town entities as defendants. *See* Art. 78 Compl. at 7; Compl. ¶ 56. That litigation was filed in anticipation of a public hearing scheduled before the Town Planning Board for November 19, 2024, regarding Old Oaks' site plan application. *See* Article 78 Compl. at 18–19. Old Oaks and the Town, being the only defendants named in a new lawsuit, therefore had strong reason to communicate around this time. Ultimately, these allegations support that Old Oaks and the Town had an open line of communication, but again, "[c]ommunications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005).

In parallel circumstances, a court in this Circuit found that a successful petition "for the state to employ its coercive [zoning] power" did not entwine the private party with the government action that resulted. *See Alfaro v. Labrador*, No. 06-CV-1470 (JS), 2009 WL

2525128, at *5 (E.D.N.Y. Aug. 14, 2009). In *Alfaro*, like here, the defendant owned a neighboring property and engaged in the same behavior that the plaintiff received a citation for. *Id.* at *1. The court found nothing to suggest "that a private citizen's successful request for Government action, through the exercise of his First Amendment petition rights, somehow 'entwines' the private party with the Government action that ultimately results, or amounts to a 'delegation' of Government power to the petitioner." *Id.* at *5. It is that same right that Plaintiff, by its own account, has exercised countless times in seeking Town action on Old Oaks' zoning violations. *See, e.g.*, Compl. ¶¶ 42–46; Art. 78 Compl.

Plaintiff's cited cases are not analogous. In *Mercer v. Schriro*, for example, the private actor held liable for joint action filed grievances, threatened the state actors with a press conference, and held repeated meetings with the state actors to secure the outcome they sought against the plaintiff. 337 F. Supp. 3d 109, 119–20 (D. Conn. 2018). The state actor specifically cited the threat of a press conference in forming its decision. *See id.* at 120. There, "the alleged act of retaliation" occurred only one day after a closed-door meeting between the actors, and the court found that the "direct[]" proximity of the retaliation to the collaboration furnished joint action. *Id.* at 146. Although *Mercer* similarly involved communication close in time to the purported joint action, the *Mercer* complaint alleged specific facts to support that the private actor exercised influence over the state actor, and that the state actor heeded that influence.

Ultimately, "the question is whether the conduct allegedly causing the deprivation of a federal right can be fairly attributable to the State." *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 199 (1988)) (cleaned up). Here, Plaintiff fails to allege the type of "direct involvement and active participation" that courts in this District have recognized constitutes this action. *See Lienau*,

2013 WL 6697834, at *7–8 (collecting cases). Accordingly, the actions that Old Oaks is alleged to have taken cannot be fairly attributable to the Town under a joint action theory.

### 2. Neither the Complaint nor the Proposed Amended Complaint Adequately Allege a Conspiracy

Alternative to the joint action theory, a plaintiff may establish state action by pleading a Section 1983 conspiracy. *Smulley*, 2023 WL 2494098, at *2 (citing *Tower*, 467 U.S. at 920); *see also Betts*, 751 F.3d at 84 n.1 ("A Section 1983 conspiracy claim is distinct from one of joint action."). Although Plaintiff plainly fails to bring a separate Section 1983 conspiracy claim in the Complaint, *see* Compl. ¶¶ 105–79, the Court considers it here as part of the Section 1983 conspiracy claim for abuse of process that Plaintiff adds to the Proposed Amended Complaint. *See* PAC ¶¶ 205–09. This proposed claim fails for all of the reasons that the Complaint does not allege joint action and for the additional reasons stated below.

To state a Section 1983 conspiracy, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324–25. Although a conspiracy "may have to be proven by circumstantial, rather than direct, evidence," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citation omitted), the agreement must be pled with some specificity. The allegations must include "'facts demonstrating that [Old Oaks] acted in concert with the [Town Defendants] to commit an unconstitutional act,'—that is, 'a meeting of the minds, such that the defendants entered into an agreement, express or tacit, to achieve the unconstitutional end.'" *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at *2 (2d Cir. Oct. 17, 2022) (summary order) (first quoting *Ciambriello*, 292 F.3d at 324; then quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)) (cleaned up); *see also Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 293 (S.D.N.Y. 2019) (explaining that a plaintiff "must still allege facts

beyond 'conclusory, vague, or general allegations' to assert the existence of an agreement to inflict constitutional injury" (quoting *Ciambriello*, 292 F.3d at 324–25)). To survive a motion to dismiss, "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (citation omitted). In other words, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." *Hickey-Mach v. Rafferty*, No. 24-CV-8410 (AMD), 2026 WL 194279, at *4 (E.D.N.Y. Jan. 26, 2026) (quoting *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 197 (E.D.N.Y. 2010)).

For the reasons stated above, the Court cannot here infer a "meeting of the minds" to commit an unconstitutional act. *See supra* Section II.B.1. In the light most favorable to Plaintiff, these allegations show only communication between Old Oaks and the Town, and a vested interest by Old Oaks in identifying violations on the 3086 Property. As other courts in this Circuit have held, "[a]lleging merely that a private party regularly interacts with a state actor does not create an inference of agreement to violate a plaintiff's rights." *Morpurgo*, 697 F. Supp. 2d at 338(quoting *Fisk*, 401 F. Supp. 2d at 377). Nor does reporting a neighbor for a possible violation. *See, e.g.*, *Anilao v. Spota*, 774 F. Supp. 2d 457, 501–02 (E.D.N.Y. 2011), *aff'd*, 27 F.4th 855 (2d Cir. 2022) ("[A] private party will not be deemed a state actor merely because he communicated with a state actor, reported a crime, or cooperated with state officials.").

This case lacks the hallmarks of other cases where courts have found that communications between a private actor and state officials lend support to a conspiracy theory. In *Anilao v. Spota*, for example, a court in the Eastern District determined that the plaintiff adequately alleged that "the County defendants would not have pursued the prosecution of plaintiffs at all but for the pressure and influence of the [private] defendants." 774 F. Supp. 2d at

502. That allegation was supported by evidence that the County defendants *knew* that the prosecution was meritless before its initiation because the defendants had already been "exonerat[ed] . . . of any wrongdoing" by the State Education Department and by other supporting evidence. *Id.* Still, the private defendants and County defendants agreed to procure an indictment through the private defendants' false testimony, which some of the private defendants in fact gave. *See id.* at 501. Here, there remains no allegation that Old Oaks "incited the exercise of state authority by pressuring the [Town] [D]efendants to take action to satisfy [its] goals and for [its] sole benefit, and then joined and participated in the exercise of that authority." *See id.* at 501.

Ultimately, that a private actor interacts frequently or shares close ties with a state actor—without more—does not support a plausible conspiracy claim. *See Pulizotto*, 406 F. Supp. 3d at 295 (collecting cases). The facts alleged here do not rise to a "sufficiently close nexus" that permits the Court to "fairly treat[]" the Town's actions as attributable to Old Oaks. *Polardo v. Adelberg*, No. 22-CV-2533 (KMK), 2023 WL 2664612, at *10 (S.D.N.Y. Mar. 28, 2023) (quoting *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664–65 (2d Cir. 2009) (summary order)) (cleaned up). And, "[a]lthough Plaintiff repeatedly asserts that Defendants entered an agreement to violate [its] civil rights," the Complaint and Proposed Amended Complaint are "devoid of facts that would render that allegation plausible as opposed to merely conceivable. *Baines v. City of New York*, No. 10-CV-9545 (JF), 2015 WL 3555758, at *12 (S.D.N.Y. June 8, 2015). Accordingly, Plaintiff's Section 1983 claims against Old Oaks are dismissed.

### C. Plaintiff States a First Amendment Retaliation Claim for the November Summons

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547

U.S. 250, 256 (2006). "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)). Defendants do not dispute that any of these requisite elements are present. Rather, the Town Defendants contend that Plaintiff's First Amendment retaliation claims must fail because the Complaint shows that the Town had probable cause to issue summonses to and prosecute Plaintiff, and the existence of probable cause completely bars a First Amendment retaliation claim. *See* Town MTD at 24–27.

As a general rule, a plaintiff bringing a retaliatory arrest or prosecution claim "must plead and prove the absence of probable cause." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019); *see also Hartman v. Moore*, 547 U.S. at 265–66. Plaintiff argues that an exception to that rule set forth in *Lozman v. Riviera Beach* applies here and, as such, the existence of probable cause to issue the June and November summonses would not defeat its claim. 585 U.S. 87 (2018). As the Court details below, because the probable cause bar to First Amendment retaliation claims applies in this case, the fact that probable cause existed to issue the June Summons bars Plaintiff's claim. However, because the Complaint adequately alleges a lack of probable cause for the November Summons, Plaintiff's First Amendment retaliation claim in that respect survives.

**1. The Existence of Probable Cause Would Defeat Plaintiff's Claims**

Not all First Amendment retaliation claims involving law enforcement and criminal prosecution are treated the same under Supreme Court precedent. On one side are cases involving a retaliatory prosecution, which stick strictly to the probable cause bar. In *Hartman v. Moore*, for example, the Court found that a plaintiff alleging retaliatory prosecution in violation

of the First Amendment must plead and prove the absence of probable cause for the underlying criminal charges. 547 U.S. 250, 265–66 (2006); *see also Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015) ("[T]he existence of probable cause will defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence him." (cleaned up)). This rule stands absolute even though the presence of probable cause "does not guarantee that inducement was not the but-for fact in a prosecutor's decision." *Hartman*, 547 U.S. at 265.

On the other side, First Amendment claims involving retaliatory *arrests* permit narrow exceptions from the probable cause bar. One exception is where a plaintiff can prove the "existence and enforcement of an official policy motivated by retaliation." *Lozman v. Riviera Beach*, 585 U.S. 87, 99–100 (2018). Another exception is "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406; *see also Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024).

The parties assume, without briefing, that the rules for retaliatory arrests apply to this case. *See* MTD Opp. at 30–32; Town Reply at 11–12. However, that assumption is misplaced. Plaintiff's First Amendment Claim is premised on the June and November issuance of summonses for its zoning violations. *See* MTD Opp. at 27 ("Plaintiff's claims under the First Amendment for unlawful retaliation are amply demonstrated by the Town's issuance of the June and November Summonses in retaliation for Plaintiff raising concerns relating to Old Oaks.").

The issuance of summonses in this case mirrors a prosecution more than an arrest. The summonses arose out of violations found days or months earlier, and were typed and signed in the presence of a notary. *See* ECF Nos. 1-3, 1-5. That level of planning has little in common with the "split-second judgments" that the Supreme Court contemplated when considering the

decisions that give rise to retaliatory arrests and, instead, invokes the "presumption of regularity . . . "that a prosecutor has legitimate grounds for the action" that courts have long afforded prosecution decisions. *See Lozman*, 585 U.S. at 98; *Hartman*, 547 U.S. at 263. Furthermore, the Second Circuit has treated a retaliation claim about analogous summonses and tickets not resulting in a custodial arrest as a claim for retaliatory prosecution. *See Mangino*, 808 F.3d at 953–54, 956 (treating summonses issued for building violations as forming the basis for a retaliatory prosecution claim); *Smith v. Campbell*, 782 F.3d 93, 100–02 (2d Cir. 2015) (treating the issuance of traffic tickets as stating a claim for retaliatory prosecution); *see also Norton v. Town of Islip*, 97 F. Supp. 3d 241, 257–58 (E.D.N.Y. 2015) (same).

Accordingly, the Court need not consider whether *Lozman* would provide Plaintiff any relief from the probable cause bar, because the instant case involves a claim for retaliatory prosecution and is thus subject to an absolute bar.

**2. The Complaint Alleges Probable Cause Was Present for the June Summons but not for the November Summons**

Plaintiff concedes that probable cause was present for the June Summons. *See* MTD Opp. at 30. However, the parties dispute whether the Town had probable cause to issue the November Summons. Ultimately, the Complaint presents sufficient facts alleging that the Town lacked probable cause to issue the November Summons, and thus the existence of probable cause is better assessed at a later stage of the litigation with the benefit of discovery.

Probable cause is assessed under "the totality of the circumstances." *Stansbury v. Wertman*, 721 F.3d 84, 92–93 (2d Cir. 2013) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007)). Probable cause to prosecute requires a "slightly" more demanding standard than probable cause to arrest. *Id.* at 95. "[T]he relevant . . . determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be

commenced." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) (quoting *Davis v. City of New York*, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005)); *see also Stansbury*, 721 F.3d at 95 (describing the standard "as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty"). This standard is measured at the time the summons was served and filed. *See Mangino*, 808 F.3d at 956–57 (2d Cir. 2015). Critically, because the Court is considering a motion to dismiss under Rule 12(b)(6), the Court must consider whether there are other "plausible interpretations" of the facts alleged by Plaintiff. *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 415 (2d Cir. 1999).

The November Summons itself does not provide the code enforcement officer's location when he observed the playhouse; rather, it states that he "observed a playhouse in the rear yard of the property" that "exceeds the permitted 15 feet in height" and "144 square feet." *See* ECF No. 1-5 at 3. However, Plaintiff's allegations in the Complaint are clear: The code enforcement officer viewed the house from a distance, and the playhouse does not measure fifteen feet. Compl. ¶ 8. It alleges numerous facts to support the proposition of no violation, including a subsequent direct measurement by a Town official and the model's manufacturer specifications. *Id.* ¶¶ 66, 69. Also, according to Plaintiff, the code enforcement officer assessed the height of the playhouse from "a distance of over 300 feet" away and "never even set foot on Plaintiff's [p]roperty." *Id.* ¶¶ 61, 64. Such a distant observation adequately alleges, for purposes of a motion to dismiss, that the Town lacked probable cause to issue a summons.[7]

[7] The Town Defendants argue, without citation, that the Harrison Town Court's denial of Plaintiff's motion to dismiss constitutes a determination that the Court should afford deference that there was probable cause for the summons. Town Reply at 10. This argument has no place here, because the Court assesses this motion in the light most favorable to Plaintiff and considers the well-pled allegations in the Complaint.

Because Plaintiff concedes probable cause for the June Summons, the First Amendment retaliation claim premised on that summons—Count IV—is dismissed. However, because the Court finds that Plaintiff adequately alleges the absence of probable cause at this stage for the November Summons, the First Amendment retaliation claim premised on that summons—Count III—survives.

**D. The Federal Equal Protection Claim Survives in Part and Fails in Part**

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision "is essentially a direction that all persons similarly situated should be treated alike." *Thomas v. Town of Southeast*, 336 F. Supp. 3d 317, 331 (S.D.N.Y. 2018). However, "the Equal Protection Clause does not require villages to enforce their ordinances in every instance in order to retain the ability to enforce them at all," and "[f]ederal courts must be wary 'about transforming run-of-the-mill zoning cases into cases of constitutional right.'" *Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220, at *2 (2d Cir. June 15, 2023) (summary order); *Adam J. v. Vill. of Greenwood Lake*, No. 10–CV–1753 (CS), 2013 WL 3357174, at *9 (S.D.N.Y. July 3, 2013) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 566 (2000) (Breyer, J., concurring)). "[C]ourts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality—whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments—being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability." *MacPherson v. Town of Southampton*, No. 7-CV-3497 (DRH) (AKT), 2013 WL 6058202, at *14 (E.D.N.Y. Nov. 14, 2013) (cleaned up).

Two types of Equal Protection claims appear in the zoning context: a traditional "selective enforcement" claim and a "class of one" claim. In a selective enforcement claim—also known as a *LeClair* claim, after the Second Circuit's decision in *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980)—a plaintiff must demonstrate that she was treated differently than similarly situated persons *because of* "an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted). A selective enforcement claim is distinct from a class of one claim in that it requires "proof of a defendant's subjective ill will" and, as a result, has a less demanding similarity requirement for comparators. *See Hu*, 927 F.3d at 93 (describing the differences). In contrast, a class of one claim requires a plaintiff to allege only that (1) it "has been intentionally treated differently from others similarly situated and [(2)] that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

Plaintiff contends that Defendants violated its rights under the Equal Protection Clause of the Constitution because Plaintiff was singled out to receive summonses for its common zoning violations without rational basis. Plaintiff's briefing makes clear that it pursues only a class of one theory. *See* MTD Opp. at 23. The Court first determines that Plaintiff states a plausible class of one claim as to the June Summons before determining that the same claim fails as to the November Summons for lack of a similarly situated comparator.

### 1. The Equal Protection Claim Partially Survives as to the June Summons[8]

Success on a class of one claim requires an "extremely high" level of similarity between comparators:

> [A] plaintiff must establish that he and a comparator are "*prima facie* identical" by showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."

*Hu*, 927 F.3d at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104–05 (2d Cir. 2005)). Only then can the Court infer that an improper purpose was responsible for the disparate treatment. *Hu*, 927 F.3d at 92 (quoting *Neilson*, 409 F.3d at 105); *accord. Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). Zoning issues, in particular, "require a stringent showing of similarity, because such decisions will often, perhaps almost always, treat one landowner differently from another." *Billeris v. Inc. Vill. of Bayville*, 694 F. Supp. 3d 214, 230 (E.D.N.Y. 2023) (quoting *Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220, at *2 (2d Cir. June 15, 2023) (summary order)); *see also In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14-CV-7228 (CS), 2016 WL 1181727, at *9 (S.D.N.Y. Mar. 25, 2016), *aff'd sub nom. Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98 (2d Cir. 2016) ("The 'similarly situated' requirement is scrutinized with particular rigor in land use related cases lest every municipal dispute over property rights finds its way to federal court in the guise of an equal protection claim." (citation omitted)); *but see also Analytical Diagnostic*

[8] Defendants argue that Plaintiff's Equal Protection claim is duplicative of the First Amendment retaliation claims. *See* Town MTD at 23–24; ECF No. 34 ("Old Oaks MTD") at 14. Because the First Amendment claim regarding the June Summons is dismissed, the Equal Protection claim is not duplicative as to that summons. The Equal Protection claim as to the November Summons fails for other reasons stated herein. *See infra* Section II.D.2.

*Labs, Inc. v. Kusel*, 626 F.3d 135, 142 (2d Cir. 2010) ("*Engquist* does not bar all class-of-one claims involving discretionary state action." (citing *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008)). "Generally, whether parties are similarly situated is a fact-intensive inquiry." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). "[O]n a Rule 12(b)(6) motion the Court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Santucci v. Levine*, No. 17-CV-10204 (PMH), 2021 WL 76337, at *5 (S.D.N.Y. Jan. 8, 2021), *aff'd*, No. 21-CV-1329-CV, 2022 WL 121281 (2d Cir. Jan. 13, 2022) (cleaned up).

If Plaintiff can identify an extremely similar comparator, the Court then undertakes a rational basis review pursuant to the second *Olech* factor. *See Hampshire Recreation*, 2016 WL 1181727, at *9. The "deferential" assessment "requires the denial of an equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis' for the Town's action." *Toussie v. Town Bd. of Town of E. Hampton*, No. 08-CV-1922 (DRH), 2010 WL 597469, at *8 (E.D.N.Y. Feb. 17, 2010) (quoting *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001)); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 500 (2d Cir. 2001) ("[The plaintiff] would be required to show either that there was no rational basis for the unequal treatment received or that the denial of the application was motivated by animus." (internal citation omitted)). Even on a motion to dismiss under Rule 12(b)(6), the Court "is not confined to the particular rational or irrational purposes that may have been raised in the pleadings," and the Town's actions "are given a strong presumption of validity." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 50 (2d Cir. 2018); *Domond v. U.S. I.N.S.*, 244 F.3d 81, 87 (2d Cir. 2001) (citation and internal quotation marks omitted). Still, rational basis review "is not meant to be toothless," and the Court need not dismiss claims for which a rational

basis for differential treatment is not evident. *See Progressive Credit Union*, 889 F.3d at 49 (citation and internal quotation marks omitted).

Plaintiff invokes different comparators for the June and November Summonses. For the June Summons, it argues that Old Oaks received violations on the same day under some of the same code provisions, but for no legitimate reason Old Oaks has been spared a summons for its similarly non-remediated issues. The Court agrees that, at this juncture, Plaintiff's claim survives.

**i. The June Summons Has an Appropriate Comparator**

Plaintiff argues that the 3086 Property and Old Oaks are similarly situated because they "are direct neighbors in the same zoning district, were cited on the same day under the same Code provisions, and installed pavement used for the same purpose (parking) adjacent to the same stream." MTD Opp. at 22 (citing Compl. ¶¶ 4, 7, 27, 31, 58, 87). Old Oaks, on the other hand, notes that its "golf course, practice facilities[,] and other amenities spanning multiple tax lots [are] not remotely comparable to Plaintiff's single-family home." Old Oaks MTD at 10. The Town also observes that, although both properties were "charged with a similar Town Code section, the basis for the violation was different." Town MTD at 23. Ultimately, although the properties are different with respect to size, development, and use, they are sufficiently similarly situated to survive a motion to dismiss, given the circumstances alleged.

The Second Circuit has implied that, in the land-use context, properties that differ in land use are not *prima facie* similarly situated. *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1314–15 (11th Cir. 2006)); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 160 (2d Cir. 2006) (same). The instant case, however, is readily distinguishable from the classic land-use case challenging a zoning board's

decision—where the different land features or use may bear on whether a permit, variance, or other permission is discretionarily appropriate. Therefore, that Old Oaks bears some "unique" features compared with the 3086 Property does not render it an inappropriate comparator under a class of one theory, because "the Town has not explained how [the distinguishing] features could have influenced [the relevant] issues." *Feiner*, 694 F.3d at 224.

Defendants correctly point to individual features that, standing alone, would not make the 3086 Property and Old Oaks similarly situated. For example, it is not enough to just allege that other violators of the same zoning provision have not received a summons. *See Lilakos v. New York City*, 808 F. App'x 4, 8–9 (2d Cir. 2020) ("Although [the plaintiffs] include dozens of allegations about the existence of other illegal hostels, [they] fail to explain how those residences are like theirs . . . . [T]hey share only one thing in common—the same alleged violation of law. That is insufficient to state an equal protection claim."); *Marom v. Town of Greenburgh*, No. 18-CV-7637 (JCM), 2020 WL 978514, at *8 (S.D.N.Y. Feb. 28, 2020) (finding that a plaintiff did not adequately plead similar situatedness for issuing summonses where only one of several violations was shared with the comparators). Other courts in this Circuit have also found that the fact that neighboring properties are in the same zoning district and share violations of the same or similar local ordinances does not suffice for the less demanding bar for selective enforcement claims. *See, e.g.*, *Santucci*, 2021 WL 76337, at *5 ("Such allegations describe only the general contours of the parcels and are insufficient to allege plausibly that the properties were similarly situated.").

However, "[e]nforcement context, sequence, and timing" also matter, and here, Plaintiff has pled the above commonalities together in a clearly parallel sequence. *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 318–19 (D. Conn. 2015), *aff'd sub nom. Gray v. Maquat*, 669 F.

App'x 4 (2d Cir. 2016). Both properties received zoning violations for modifications made without a permit or variance, which Plaintiff claims include a parking area on both properties near a shared waterway, and for their failure to secure land development approval from the Town Engineer related to stormwater management. ECF Nos. 1-1 to 1-2; Compl. ¶¶ 27–32. The violations were issued on the same day, and thus the Town was equally aware of the problems on both properties. Another court in this Circuit found that where a plaintiff alleged that neighbors shared the same land feature in violation of zoning requirements—and of which the Town was aware—sufficient similarity had been stated at the motion to dismiss stage. *LaVertu v. Town of Huntington*, No. 13-CV-4378 (SJF) (WDW), 2014 WL 2475566, at *9–10 (E.D.N.Y. Apr. 4, 2014), *report and recommendation adopted in part*, No. 13-CV-4378 (SJF), 2014 WL 2506217 (E.D.N.Y. June 2, 2014); *see also Spiegel v. Adirondack Park Agency*, 662 F. Supp. 2d 243, 254 (N.D.N.Y. 2009) (finding that the town's "conscious[]" decision "not to investigate or pursue . . . violations by similarly situated homeowners . . . could establish that the [plaintiffs] were treated selectively").

Furthermore, in *Alfaro v. Labrador*, like here, the defendant owned a neighboring property and engaged in the same behavior that the plaintiff received a citation for. No. 6-CV-1470 (JS), 2009 WL 2525128, at *5, *10 (E.D.N.Y. Aug. 14, 2009). The court found that that the plaintiff could survive summary judgment on its class of one claim where one comparator owned businesses "in close proximity" and "engaged in similar, albeit not identical, zoning violations," and another comparator was the plaintiff's next-door neighbor who also operated a non-permitted illegal business. *Id.* at *10.

Although a close call, the Court here finds that the Complaint surmounts the bar for similar situatedness as to the June Summons, at this stage of the litigation and in light of the fact-intensive nature of the inquiry.

**ii. The Town Fails to Assert a Rational Basis for Issuing the June Summons Only to Plaintiff**

Ultimately, the Court sustains the federal Equal Protection claim as to the June Summons, because the Town fails to identify a rational reason for its decision to issue a summons only to Plaintiff—and none is apparent to the Court. *See Toussie v. Town Bd. of Town of E. Hampton*, No. 08-CV-1922 (DRH), 2010 WL 597469, at *8 (E.D.N.Y. Feb. 17, 2010) (requiring "the denial of an equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis' for the Town's action" (quoting *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001))).

The Town argues that the unpermitted construction at Old Oaks involves "multiple regulatory approval processes that remain ongoing," unlike Plaintiff's "residential driveway expansion." Town Reply at 9. And, the "complex, multi-year remediation" at Old Oaks requires "Planning Board approval, variance determinations, and stormwater compliance." *Id.* However, these factors do not account for a decision to enforce violations against Plaintiff less than four months after their issuance and the continued declination to enforce similar, and in many ways more extensive, violations against Old Oaks more than thirty-one months after their issuance. The Court, therefore, cannot conclude as a matter of law and at this stage of the litigation that the Town has a rational basis for this distinction. Accordingly, the Court finds that the claim survives Defendants' motion to dismiss.

**2. The Equal Protection Claim Fails as to the November Summons for Lack of an Appropriate Comparator**

With respect to the November Summons, Plaintiff contends that it has been treated differently from other residents of Harrison who have playhouses under fifteen feet—namely, it has been erroneously prosecuted for having a playhouse over fifteen feet, and they have not. Compl. ¶¶ 87, 111. This argument fails.

Plaintiff's conclusory allegations do not adequately allege the existence of other similarly situated houses with comparable playhouses. Because this fact is "no more than [a] conclusion[]," it is "not entitled to the assumption of truth." *Ruston*, 610 F.3d at 59 (citation omitted); *see also New Page at 63 Main, LLC v. Inc. Vill. of Sag Harbor*, No. 15-CV-2433 (ADS), 2016 WL 8653493, at *21 (E.D.N.Y. Mar. 19, 2016), *aff'd*, 674 F. App'x 23 (2d Cir. 2016) (dismissing a claim where the plaintiff did "not identify any particular restaurant" or "offer any non-conclusory allegations suggesting that all of the [nearby] restaurants . . . were similarly situated to the [plaintiff] in all material respects"). Moreover, it does not meet the Second Circuit's requirement that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Hu*, 927 F.3d at 92. Indeed, here, because Plaintiff repeatedly insists that it is not pursuing a selective enforcement claim based on "malice," MTD Opp. at 23, 26, the comparators lack enough detail for the Court to preclude that the Town Defendants acted on the basis of a mistake.

In any event, it is not enough for Plaintiff to conclusorily allege the existence of other properties with equivalent playhouses. "[T]o identify a similarly situated comparator, [Plaintiff] must show, at minimum, that the village was put *on notice of* another village resident" who had committed the same violation. *Lepper*, 2023 WL 4004220, at *2 (emphasis added); *see also Deegan v. City of Ithaca*, 444 F.3d 135, 146 (2d Cir. 2006) (finding that plaintiff was not

similarly situated to others where there was "no record of complaints about anyone but [the plaintiff]"); *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001) (requiring class of one plaintiffs to prove "*intentional* disparate treatment," i.e., to demonstrate that decisionmakers were aware of similarly situated individuals who were treated differently); *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) ("While . . . the previous occupants of the premises violated the zoning restriction and . . . the Village did not enforce the restriction against them, [the plaintiff] failed to show that the Village knew about these violations. Absent such proof, [the plaintiff] would be hard-pressed to show that it was singled out for selective treatment.").

For this reason, Plaintiff's allegation in the Proposed Amended Complaint that the Town has "never issued a summons" to a Harrison property owner other than Plaintiff for a playhouse "exceeding [fifteen] feet in height, when the playhouse was in fact under [fifteen] feet," does not change the Court's analysis. *See* PAC ¶ 18. Plaintiff still does not identify any particular property or playhouse that is similarly situated that the Town knew about, and thus the claim fails.[9]

As a general matter, courts do not fault local governments for not tracking down and pursuing the relevant comparators. *See, e.g.*, *Gray*, 115 F. Supp. 3d at 318. Because Plaintiff cannot identify a similarly situated comparator as to the November Summons, its federal Equal Protection claim is dismissed in part.

**E. The State Equal Protection Claim Fails**

The New York State Constitution similarly guarantees equal protection under the law. N.Y. Const. art. I, § 11. However, "[c]ourts in this Circuit have 'uniformly held that no private

[9] Of course, here, it is not clear what the Town would be on notice of—as Plaintiff argues that the appropriate comparators are houses that do not violate any zoning laws at all.

right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under [Section] 1983 for violations of parallel provisions of the U.S. Constitution.'" *Chinese Am. Citizens All. Greater N.Y. v. N.Y.C. Dep't of Educ.*, 802 F. Supp. 3d 483, 539 (S.D.N.Y. 2025) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 408 (S.D.N.Y. 2021)). "These courts rely on the premise that [Section] 1983 provides an adequate alternative remedy for violations of the New York State Constitution." *Id.* (citation and internal quotation marks omitted). Thus, courts ordinarily dismiss claims under the New York State Constitution alleging no theories of liability that are "exclusively" cognizable under that text. *Id.* (citing *Buari*, 530 F. Supp. 3d at 409). Here, the parties do not present any separate arguments regarding the selective enforcement claims under the New York State Constitution, and the Complaint also presents nearly identical allegations under each claim. *See* Compl. ¶¶ 105–23. Accordingly, Plaintiff fails to present any basis to distinguish its state Equal Protection claim from its federal Equal Protection claim, and the former (Count II of the Complaint) is properly dismissed.

## III. The Anti-SLAPP Claims Fail

New York is one of many states with a so-called "anti-SLAPP law"—that is, a law limiting "strategic lawsuits against public participation" that have "little legal merit but are filed nonetheless to burden opponents with legal defense costs and to discourage those who might wish to speak out in the future." *Satanic Temple, Inc. v. Newsweek Digit. LLC*, 177 F.4th 202, 210–11 (2d Cir. 2026) (cleaned up); *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022). In New York, the law permits "[a] defendant in an action involving public petition and participation . . . [to] maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action."

N.Y. Civ. Rights Law § 70-a(1).[10] The law covers any public communication or lawful conduct protected by the First Amendment made about "an issue of public interest" where a lawsuit directed at that communication was brought or continued without "a substantial basis in law and fact." *Carroll*, 590 F. Supp. 3d at 580–81 (quoting N.Y. Civil Rights Law §§ 70-a(1)(a), 76-a(1)(a)). A "substantial basis" means "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 570 (S.D.N.Y. 2025) (quoting *Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 22 (2024), *leave to appeal dismissed*, 44 N.Y.3d 990 (1st Dep't 2025)). It does not, however, require that the underlying case ultimately terminate in the anti-SLAPP plaintiff's favor. *See Reeves*, 218 N.Y.S.3d at 23–24 (2024) (considering "whether the allegations and evidence presented would require submission to a jury as a question of fact" (citation omitted)).

Plaintiff brings anti-SLAPP claims against the Town Defendants for initiating and pursuing a criminal prosecution in retaliation for Plaintiff's public complaints about Old Oaks. Compl. ¶¶ 158–68. As an initial matter, the Town's prosecution is not "an action involving public petition and participation." N.Y. Civ. Rights Law § 70-a(1). The Town brings a proceeding to enforce its zoning code against Plaintiff, which, even if allegedly in retaliation for protected communication, is not "*directed at* that communication." *Carroll*, 590 F. Supp. 3d at 580–81 (emphasis added).

---

[10] The Town Defendants do not challenge the substantive applicability of Section 70-a in this Court, which a growing number of courts in this District, including the undersigned, favor. *See, e.g.*, *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049 (LJL), 2026 WL 852733, at *4 (S.D.N.Y. Mar. 27, 2026); *Grifols, S.A. v. Yu*, No. 24-CV-00576 (LJL), 2026 WL 836657, at *4 (S.D.N.Y. Mar. 26, 2026); *Button v. New York Times Co.*, No. 24-CV-5888 (MKV), 2025 WL 2643674, at *20–21 (S.D.N.Y. Sept. 15, 2025); *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551 (S.D.N.Y. 2025); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 182 (S.D.N.Y. 2024), *appeal withdrawn*, No. 25-17, 2025 WL 1009663 (2d Cir. Mar. 31, 2025).

Second, Plaintiff frames its anti-SLAPP claims as two counts for, respectively, the June Summons and the November Summons. *See id.* However, a claim under Section 70-a is based on "an *action* involving public petition and participation"—i.e., a "strategic lawsuit[]"—in which an anti-SLAPP plaintiff is or was a defendant. N.Y. Civ. Rights Law § 70-a(1) (emphasis added); *Satanic Temple*, 177 F.4th at 210–11. Because there is only one consolidated prosecution against Plaintiff arising from both the June Summons and the November Summons, *People of the State of New York v. 3086 Purchase LLC*, Docket No. 2411-0544 (Harrison Town Ct.), the two counts are duplicative and properly analyzed together. *See* ECF No. 35-7 at 2–3 (describing both the February and the November violations); *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)) (permitting the Court to take judicial notice of "publicly available documents" on a motion to dismiss).

Here, Plaintiff's admission of probable cause as to the June Summons establishes, as a matter of law, that the prosecution was commenced with a substantial basis in law and fact. *See* MTD Opp. at 30; Town Reply at 12. Because there is no separate lawsuit ensuing from only the November Summons, the arguable absence of probable cause to issue that summons does not dissipate the substantial basis in law and fact that the June Summons provided for the consolidated prosecution's initiation and continuation.

Plaintiff does not dispute that the June Summons has a substantial legal and factual basis but rather resorts to the "vindictive[]" nature of the prosecution against it. *See* MTD Opp. at 51–52. As Plaintiff's own cited cases show, this discussion of vindictiveness and retaliation pertains to the dismissal of criminal indictments and thus has no clear legal bearing on New York's anti-SLAPP law. *See id.* (citing *United States v. Johnson*, 171 F.3d 139, 140–42 (2d Cir. 1999), which

reverses a district court decision to dismiss a criminal indictment for vindictive prosecution; *United States v. P.H.E., Inc.*, 965 F.2d 848, 858–60 (10th Cir. 1992), which reverses a district court's determination that an "untainted" prosecutor's participation cured an otherwise vindictive criminal prosecution; and *United States v. Carey*, 816 F. Supp. 3d 129, 144 (D.D.C. 2026), which permits a criminal defendant to obtain discovery as to his vindictive prosecution claim). Even if the Court were inclined to apply the same constitutional doctrines here, Plaintiff's cases indicate that criminal indictments dismissed for vindictiveness are not dismissed for lack of a basis in law and fact—but rather because "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of his rights[] [and] the appearance of vindictiveness must also be avoided." *Johnson*, 171 F.3d 139, 140; *see also P.H.E., Inc.*, 965 F.2d at 849 ("The First Amendment bars a criminal prosecution where the proceeding is motivated by the improper purpose of interfering with the defendant's constitutionally protected speech." (citation omitted)); *Carey*, 816 F. Supp. 3d at 138 (distinguishing whether the defendant's "alleged conduct would violate the law" from "being prosecuted because of . . . constitutionally protected speech."). Accordingly, Plaintiff's argument is rejected.

Because the consolidated prosecution is based on probable cause, and thus has a substantial basis in law and fact, Plaintiff's claims under New York's anti-SLAPP law are dismissed.

## IV. The RICO Claim Fails

Plaintiff next asserts a civil RICO claim under 18 U.S.C. § 1962(c) against Defendants Germani and Old Oaks. This claim likewise fails. Although civil RICO has a broad construction, *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985), "plaintiffs wielding RICO almost always miss the mark," *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414

(E.D.N.Y. 2017) (citing *Gross v. Waywell*, 628 F. Supp. 2d 475, 479–83 (S.D.N.Y. 2009)). Consequently, district courts must "carefully scrutinize RICO claims at the motion to dismiss stage." *Secure Source Claims Co., LLC v. Miller*, No. 22-CV-9764 (JGLC), 2024 WL 1342804, at *3 (S.D.N.Y. Mar. 29, 2024) (citation omitted). "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (citation omitted).

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (cleaned up). Under the first element, to prove a violation of Section 1962(c), a plaintiff must plead seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 600 (S.D.N.Y. 2015) (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see also O'Neill v. Hernandez*, No. 8-CV-1689 (KMW), 2010 WL 1257512, at *9 (S.D.N.Y. Mar. 25, 2010).

Plaintiffs' claim fails because it does not allege predicate acts that can form the basis of a RICO claim. Plaintiff claims that the following acts constitute mail or wire fraud: (1) the June Summons, sent by mail, was part of an "overall scheme to discriminatorily enforce the Town's zoning code;" (2) the November Summons, also sent by mail, was part of the same scheme and

included "the false statement that the playhouse exceeds 15 feet;" and (3) the November 20–27 emails sent by Old Oaks' attorney contributed to the same scheme. MTD Opp. at 39–40.

Second Circuit precedent quickly forecloses Plaintiff's RICO bid. "[W]here, as here, a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018); *see also FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) ("[C]ourts have consistently refused to recognize as wire or mail fraud even litigation activities that rise to the level of malicious prosecution simply because the mail or wires were used."); *Corsini v. Reich*, No. 25-2710, 2026 WL 1397229, at *2 (2d Cir. May 19, 2026) (summary order) (affirming dismissal of RICO claims where "each of the alleged predicate offenses was based on Defendants' alleged litigation conduct," including making false representations to the relevant tribunal); *Dees v. Knox*, No. 24-1574-CV, 2025 WL 485019, at *2 (2d Cir. Feb. 13, 2025) (summary order), *cert. denied*, 146 S. Ct. 201 (2025) (affirming dismissal of RICO claims based only on "allegations of fraudulent activities directly related to the initiation or continuance of legal proceedings").

As explained *supra*, the June and November Summonses contribute to the same litigation, ECF No. 35-7 at 2–3, and thus the allegation that they include meritless, and even "fraudulent," statements fits directly under the Second Circuit's bar. In any event, for the reasons stated in Section II.B.1, the emails sent between Old Oaks employees after the issuance of the November Summons do not tend to show any participation with the Town in issuing the playhouse violation—and, indeed, show that the topic of Old Oaks' concern involved topics for which no summons was eventually issued. Because the RICO claim is properly dismissed, the

Court does not address Defendants' arguments as to the various other deficiencies with Plaintiff's claim.

**V. Leave to Amend Is Largely Denied**

Finally, Plaintiff requests leave to amend the Complaint to add, *inter alia*, Section 1983 claims for abuse of process and conspiracy to commit abuse of process. *See* ECF No. 74. Leave to amend is "within the sound discretion of the trial court" and, in general, shall be freely granted "when justice so requires." *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); Fed. R. Civ. P. 15(a)(2). However, because Plaintiff seeks amendment after the deadline set in the scheduling order, it must also demonstrate "good cause" to do so. *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (cleaned up). The Supreme Court has instructed that leave should also be denied upon a showing of "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy*, 482 F.3d at 200 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Undue prejudice to the opposing party "has been described as the most important reason for denying a motion to amend." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citations omitted). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc.*, 681 F.3d at 119 (internal citation omitted).

Plaintiff lacks good cause to add an abuse of process claim based on retaliation. A plaintiff states a claim for abuse of process in New York against "a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is

outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (citation and internal quotation marks omitted). Here, most of the allegations to state this claim were available to Plaintiff upon filing its original complaint, after Defendants filed their Motions to Dismiss, and even well before the scheduling deadline passed. However, Plaintiff waited until the Motions to Dismiss were fully briefed and discovery was nearly over to assert this claim. Accordingly, the Court finds no good cause to permit amendment to add the claim at this stage in the litigation.

To the extent the claim is based on a collateral objective to "advanc[e] Old Oaks' private interests," the new allegations in the Proposed Amended Complaint are the same ones that the Court has determined fail, as a matter of law, to state a conspiracy claim or provide joint action liability. *See* PAC ¶¶ 200–01; *supra* Section II.B. For the reasons stated above, the Court credits those allegations as establishing, at most, (1) an open line of communication between Old Oaks and the Town, and (2) Old Oaks' interest in seeing Plaintiff prosecuted. *See* Section II.B. Together, these allegations do not plausibly support that Old Oaks had a collateral objective that influenced the Town's issuance of summonses and decision to prosecute. Accordingly, the Court determines that a Fourth Amendment claim for abuse of process based on Old Oaks advancing its private interests would be futile and thus the Court denies leave to amend on that basis.

Although newly discovery evidence may constitute good cause, leave to amend is also properly denied as to the conspiracy claim on undue delay, undue prejudice, and futility grounds. In its opposition to the Motions to Dismiss, Plaintiff dismissed its Section 1985 claim on the understanding that a Section 1985 and Section 1983 conspiracy claim were duplicative. *See* MTD Opp. at 35 n.10. However, Plaintiff at that juncture had not actually pled a Section 1983 conspiracy claim—and it waited nearly four months and further briefing to assert such a claim.

*See* MTD Opp.; ECF No. 74. Through that briefing, Defendants expended time reviewing and preparing their papers and litigating numerous discovery disputes with Plaintiff. In any event, for the reasons stated *supra* in Section II.B.2, the conspiracy claim is futile. The new allegations do not remedy Plaintiff's joint action problem and thus fail to state a conspiracy claim against any defendant or allege liability cognizable under Section 1983 against Old Oaks.

The Court will, however, permit Plaintiff to file an amended complaint to add any allegations that support Plaintiff's surviving First Amendment retaliation and Equal Protection claims.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss is GRANTED in part and DENIED in part. All claims are dismissed with prejudice except for Counts I and III, which allege that the June Summons was issued to Plaintiff without rational basis in violation of the Equal Protection Clause and that the November Summons constituted retaliation in violation of the First Amendment. All claims against Defendant Old Oaks Country Club, Inc. are dismissed. The Motion to Amend is also DENIED in part, except that Plaintiff may file an amended complaint adding any allegations asserted in the Proposed Amended Complaint that support Plaintiff's surviving claims. Any amended complaint shall be filed by **October 16, 2026**. The Clerk of Court is directed to terminate ECF Nos. 33, 36, and 74, and terminate Defendant Old Oaks Country Club, Inc.

Dated: September 30, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge